**1138**

GENERAL ELECTRIC COMPANY,
Plaintiff,

v.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, LOCAL 647, Defendant.

No. C–1–82–402.

United States District Court,
S.D. Ohio, W.D.

Aug. 10, 1983.

William K. Engeman, Cincinnati, Ohio, for plaintiff.

Frederick G. Cloppert, Jr., Columbus, Ohio, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SPIEGEL, District Judge:

Plaintiff General Electric Company brought this action for damages pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiff alleges that defendant Local 647 authorized an illegal strike March 23, 1982 at plaintiff's factory at Evendale, Ohio. In particular, plaintiff asserts that the cause of the strike was the Blanton incident which involved the alleged choking of a union member by a foreman, an incident which at the time of the strike had not been subject to the complete grievance process. Local 647 maintains that the cause of the strike was a series of unresolved grievances and thus that the strike was legal under the exception to the no-strike clause embodied in the collective bargaining agreement between the parties.

This matter was bifurcated for trial. The question of liability was tried to the bench with the parties agreeing that the sole issue was whether the March, 1982 strike was

called by Local 647 in violation of the collective bargaining agreement.

The Court finds that the cause of the March 1982 strike was unresolved grievances. The strike was thus legal under the terms of the collective bargaining agreement, and accordingly, the claims of General Electric must be dismissed. The following constitutes our Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

*Background*

The following facts were established prior to trial by admissions in the pleadings and stipulations of counsel.

Plaintiff General Electric Company (GE) is a New York corporation with a place of business and factory at Evendale, Ohio where it produces aircraft engines. Plaintiff is an employer engaged in an industry affecting commerce within the meanings of §§ 2(2), and (7) and 501 of the Labor Management Relations Act of 1947, 29 U.S.C. § 152(2), (7) and 142.

Defendant Local 647 serves with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America as the exclusive bargaining representative for certain GE employees employed at the Evendale factory. Local 647 is a labor organization within the meaning of 29 U.S.C. § 152(5).

GE and Local 647 were parties to a collective bargaining agreement effective from July 16, 1979 until July 11, 1982. Article XXIII of the agreement generally prohibits strikes during the term of the contract. However, subsection two of Article XXIII creates an exception to the general no-strike rule and permits mid-term strikes "[i]n the event that a grievance which has been processed through all of the respective steps of the grievance procedure as set forth in Article XXI remains unsettled, and the Company thereafter refuses to arbitrate the grievance." The parties typically refer to a grievance which falls within the classification described by Article XXIII(2) as an "unresolved grievance".

On the evening of March 23, 1982 Local 647 called a strike. The strike lasted until the morning of March 27, 1982.

Local 647 did not notify GE that it intended to call a strike. Neither did it identify the reason(s) for the strike until some time after the strike began.

Bill Adams, president of Local 647, subsequently identified six grievances as the basis for the strike in a phone call with Robert Young, GE's Manager of Union Relations. Local 647 requested arbitration of these six grievances in two letters dated October 12, 1981; GE denied arbitration of these grievances by letters dated November 11, 1981.

An additional four grievances were later identified as causes for the March 1982 strike. Local 647 had requested arbitration of these grievances in letters dated October 23, 1981 and November 9, 1981; GE denied arbitration of these grievances by letters dated February 1, 1982. These ten grievances are thus unresolved grievances within the meaning of Article XXIII(2).

The parties had not specifically discussed any of these grievances in the three months preceding the March 1982 strike. These grievances were also not discussed at the third-step grievance meetings between GE representatives and Local 647's bargaining committee March 22, 1982 and March 23, 1982.

On March 5, 1982 a GE foreman named Blanton allegedly choked a Local 647 member. Blanton was suspended for two weeks, returning to his former position on March 22, 1982, the day before the strike was called. During the week preceding the strike, members of Local 647's bargaining committee on several occasions raised the Blanton incident with GE management personnel. The Blanton incident was not an unresolved grievance for it had not been presented through the grievance procedure established by the collective bargaining agreement.

*Discussion*

If the Blanton incident was the cause of the March 1982 strike, then the strike was clearly illegal as that incident was not an

unresolved grievance and thus could not be the basis for a mid-term strike pursuant to Article XXIII(2). On the other hand, if unresolved grievances were the reason for the strike, then the strike was legal under Article XXIII(2), the exception to the no-strike clause.

 The reasons for which a strike is called is a factual determination. *Ryder Truck Lines, Inc. v. Teamsters Freight Local Union No. 480,* 705 F.2d 851, 856–58 (6th Cir.1982). Statements by union officials or by management personnel of the strike employer are not dispositive. Rather the Court is obliged to look at all the circumstances leading up to and surrounding the strike, including statements by and actions of both labor and management.

Strikes may be called for more than one reason. Plaintiff's position is that if the March 1982 strike was called because of unresolved grievances *and* the Blanton incident, then the strike was illegal. GE relies upon the decisions of arbitrators interpreting similar collective bargaining agreements in which the arbitrators place the burden on the union to show "clear affinity . . . between the proximate cause of the walkout and the exhausted grievance." *General Electric Company* (IUE, Local 119-Philadelphia, Pa.), National Docket No. 22,-516 (Cahn, 1970).

We disagree and find this interpretation of Article XXIII(2) inapplicable to a Section 301 suit for damages brought by an employer. In that situation, the burden is clearly on the plaintiff employer to prove that the strike was called for impermissible reasons. If there is more than one reason for a strike, and one of the reasons is impermissible under the terms of the collective bargaining agreement, the proper test is whether the strike would have occurred even in the absence of the impermissible reason.

Our view is that the most appropriate analogy to multiple-cause strikes are the mixed motive discharge cases. In *Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court held that once a plaintiff showed that his employer's disapproval of the plaintiff's exercise of his First Amendment rights was a factor in the decision to discharge, the burden shifts to the employer to prove by a preponderance of the evidence that a discharge would have occurred even if the desire to punish plaintiff for exercising his First Amendment rights had not been present.

The Supreme Court recently upheld the National Labor Relations Board's reliance on *Doyle's* allocation of proof in unfair labor charge cases based upon the discharge of an employee. *NLRB v. Transportation Management Corp.,* —— U.S. ——, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983). The Board had established the burden of proof in such cases in *Wright Line,* 251 N.L.R.B. 1083 (1980), enforced, 662 F.2d 899 (1st Cir. 1981). Under *Wright Line,* the General Counsel has the burden of proving that anti-union animus contributed to the employer's decision to discharge an employee, but the employer can avoid the finding by proving by a preponderance of the evidence that the employee would have been discharged even if he had had no relationship with the union. The Supreme Court held that the Board's allocation of burden of proof was permissible: such an allocation "extends to the employer what the Board considers to be an affirmative defense but does not change or add to the elements of the unfair labor practice that the General Counsel has the burden of proving." —— U.S. at ——, 103 S.Ct. at 2474.

A similar test is appropriate in the instant case. GE, as plaintiff, retains the burden of proving that the cause of the strike was impermissible under the terms of the collective bargaining agreement, i.e., that the strike was caused by something other than unresolved grievances. Local 647 can avoid that finding by proving by a preponderance of the evidence that it would have struck for permissible reasons even if the Blanton incident had never occurred.

Such a test does not place too heavy a burden on the union calling the strike. Where the situation is such that a union has both permissible and impermissible reasons

for calling a strike, it is fair that it bear the risk that the reasons cannot be separated because it created the risk by calling the strike under such circumstances.

GE and Local 647 bargained for the exception to the no-strike clause. In addition, the parties bargained' for a contract which precludes arbitration of subcontracting grievances. Article XXIV; *see also* our earlier Opinion and Order in this matter dated February 7, 1983 (doc. 23). The testimony at trial revealed that GE has consistently declined to submit unresolved subcontracting grievances to arbitration. In addition, the trial testimony clearly established that at any given time there are unresolved grievances as well as grievances that have not yet made their way through process. So long as GE maintains its position of refusing to arbitrate subcontracting grievances, it leaves itself at risk of a mid-term strike.

However the exception to the no-strike clause created in Article XXIII(2) is just that—an exception—and permits mid-term strikes only over unresolved grievances. Thus, if it decides to call a strike, the union must assume the risk that GE will challenge the legality of the strike. Otherwise the exception would swallow the rule, and the union could call strikes at will, using unresolved grievances as a pretext. Because the exception created by Article XXIII(2) may not be used as a weapon, the Court will examine the alleged reasons for the strike closely.

■ To reiterate, if a collective bargaining agreement contains a general no-strike clause but permits mid-term strikes under certain circumstances, *Doyle's* allocation of the burden of proof shall be applied in a § 301 suit for damages by an employer based upon a mid-term strike. The employer has the burden of proving by a preponderance of the evidence that the strike is called for reasons impermissible under the collective bargaining agreement. The union can avoid such a finding by proving by a preponderance of the evidence that the strike would have occurred for permissible reasons even if the impermissible reason had never developed.

*Trial Testimony*

A number of documents were received into evidence reporting statements by union members and officers and GE management personnel made before, during, and just after the strike. Union newsletters were also admitted as was the parties' joint statement announcing the end of the strike. The Court received newspaper accounts and videotapes of television news reports of the strike. Finally, we heard live testimony from various union officers, including President Bill Adams and several union committeemen, and GE management personnel, including Manager of Union Relations Robert Young and Manager of Employee Relations Charles Ohmer.

The documentary evidence is not dispositive. We are, however, persuaded by the testimony of union officials who we find more credible than management personnel. All witnesses had an interest in the outcome of this case. Nevertheless, union officials are in a better position than management to know exactly what motivates a strike. Management personnel are basically interpreting the actions and words of others.

■ The Court's role similarly is to interpret the actions and words of others, but we have the advantage of a neutral vantage point removed from the passions generated by a strike. After weighing all the evidence, we find that defendant proved by a preponderance of the evidence that the March 1982 strike would have occurred even if the Blanton incident had not occurred.

The testimony clearly established that Local 647 had been considering a strike since June, 1981. At a membership meeting June 28, 1981, over 90% of the members voted by secret ballot for a strike, thereby authorizing the bargaining committee of Local 647 to call a strike at its discretion.

In November, 1981, Local 647 President Bill Adams and Recording Secretary Joe

Mullins requested strike authorization from UAW International Regional Director Charles Bolling. The letter requested authorization on the basis of unresolved grievances, a list of which accompanied the letter. All of the grievances listed involved sub-contracting issues. Regional Director Bolling subsequently granted strike authorization.

Members and officers of Local 647 continued to be concerned about sub-contracting issues. In a Local 647 newsletter dated January 29, 1982 President Adams stated that GE was continuing to subcontract out work even though union members had been laid off. He added that GE was refusing to arbitrate these grievances and concluded "we either have to give up on the grievances or take strike action, there being no other choices".

A strike threatened in late January 1982 but was averted at the last moment. A Local 647 newsletter dated February 3, 1982 explaining why the strike was called off states that the "farm out [subcontracting] of our work is still an issue very critical to our survival." Subcontracting issues were a major issue at a membership meeting March 1, 1982, with members expressing a strong interest in a strike.

The "Blanton incident" occurred March 6, 1982. That incident involved the alleged choking of a union member by foreman Blanton. The foreman was suspended for two weeks, returning to work at his former position, March 22, 1982.

The Blanton incident was the subject of intense discussions between GE management and Local 647. The union's position was that Blanton should not be placed in his former position but should be given a comparable job elsewhere in the plant. The union also argued for reinstatement of several of its members who had been discharged for allegedly fighting, behavior which the union equated with Blanton's conduct. The Blanton incident had not been processed through all steps of the grievance process and thus was not an unresolved grievance as of March 23, 1982.

President Adams called a meeting of the bargaining committee March 23, 1982. A motion to strike over "unresolved grievances" was made by committeeman Larry Mahan and recorded in the bargaining committee meeting minutes for March 23, 1982. The motion to strike passed by a vote of eight to two. Several committee members testified that sub-contracting issues were discussed at the strike vote meeting.

Pursuant to the vote of the bargaining committee, picket lines were set up at the Evendale plant at 8:00 p.m. March 23, 1982.

After learning of the strike, Robert Young, GE's Manager of Union Relations at the Evendale plant, had a telephone conversation with President Adams. Young testified that in response to his question about the reason for the strike, Adams stated that he would give GE the same answer he had given the three television stations:

Have several unresolved grievances/issues and I also mentioned the foreman assault on one of our members.

The preceding statement appears in Young's hand-written notes of the conversation. Young testified that the statement is an exact quote of Adams' response, but that the remainder of the notes summarize the conversation rather than reporting it verbatim. Young also testified that part of the discussion focused on the Blanton incident and that he told Adams that the Blanton incident was not an appropriate issue over which to strike.

The Court finds Young's testimony most credible. There was some dispute as to whether Adams listed specific grievances by number during that March 23rd phone call or later. Nevertheless, Young's testimony clearly established that from the beginning of the strike GE was aware that unresolved grievances were a major cause of the strike although perhaps not the sole cause.

GE knew as well as Local 647 that the union had requested arbitration of a number of subcontracting agreements over a long period of time, and that GE had declined to arbitrate such issues. Furthermore, the testimony of both GE and Local 647 witnesses clearly established that sub-

contracting had been a bone of contention for a long time. The fact that the union had elected not to go out on strike over unresolved subcontracting issues at an earlier date does not eliminate its ability to strike over such unresolved grievances at a later date.

On March 25th, Robert Young called President Adams to inform Local 647 that GE considered the strike in violation of the collective bargaining agreement and was considering all appropriate action up to and including a suit for damages. Adams identified six grievances. Although Young recorded the grievances, he told Adams that GE considered the grievances a subterfuge for an illegal strike.

Plaintiff offered television and newspaper reports, many of which focused on the Blanton incident and most of which included interviews with, or statements by, President Adams. Some of these reports indicated that the Blanton incident was the cause of the strike. It goes without saying, however, that newspaper and television reports in themselves are merely evidence and alone cannot establish the legal cause of the strike.

Plaintiff argues that the March 23 reports show that Adams regularly referred to the Blanton incident as the cause of the strike and stated that the union wanted Blanton moved to a different area and union members reinstated. GE also argues that only after the morning of March 25th when GE threatened legal action did Adams begin to state to reporters that unresolved grievances were the cause of the strike.

We find the focus on the Blanton incident unsurprising. By everyone's account it was a volatile issue. We would be more surprised if none of the persons on the picketline had mentioned the incident. Moreover, it is likely that the Adams interviews were edited so as to eliminate or minimize references to unresolved grievances, thereby emphasizing, the far more vivid—and we suspect easily reported—Blanton incident.

But even if we assume that the interviews were not edited, we do not find them as unequivocal as does plaintiff. On at least one television interview the night of the strike, Adams was quoted as saying that there was more to the strike then the Blanton incident and that GE had refused to arbitrate a number of issues. Although persuasive evidence of the tension and passions surrounding the strike, the television and newspaper reports are at best equivocal evidence as to the cause of the strike.

On March 26, 1982 the parties held discussions in an attempt to resolve the strike. The subjects included the subcontracting grievances, the Blanton incident, and the union's request that members who had been discharged for fighting or threatening foremen be reinstated. GE asserts that this evidence that Local 647 continued to try to get GE to change its position about Blanton demonstrates that the Blanton incident was a cause of the strike. We disagree.

First, even though we admitted the testimony over objection, we are not sure that the parties' actions to resolve the strike are pertinent to determining the cause of the strike. And even if pertinent, these actions are clearly not dispositive. That the Blanton incident was discussed at these meetings does not mean that the Blanton incident was the cause of the strike. Obviously the incident was an emotionally charged issue. In our view, it makes eminent sense that the parties would attempt to resolve such a volatile issue in the process of trying to terminate the strike, whether or not the issue was a cause of the strike.

Similarly we do not find the joint press release of March 27, 1982 announcing the end of the strike relevant on the issue of the cause of the strike. That press release announced that meetings would be scheduled immediately "in the interest of resolving the issues". The testimony was that the meetings following the strike focused on issues other than unresolved subcontracting issues.

Again, however, it only makes sense that the parties would attempt to resolve as many issues as possible—including one as emotionally charged as the Blanton incident—in the atmosphere following the

strike. Testimony at trial established that Local 647 called mid-term strikes in 1970, 1971 and 1975 over unresolved grievances, and that the discussions during and after those strikes included considerations of issues other than the unresolved grievances precipitating the strikes. For purposes of determining the cause of the March 1982 strikes, we accord little weight to the mid- and post-strike discussions by the parties.

Plaintiff presented a number of written statements by GE management personnel describing oral exchanges with union members indicating that the union was seeking an emotional issue over which to strike or that the strike was called over the Blanton incident. The thrust of those statements was rebutted by handwritten comments of the union members involved. Joint Exhibit IX. We find the latter versions of these exchanges more credible.

We recognize that some of the members did not dispute saying that they were striking because of the choking incident. Nonetheless, the statements are not conclusive evidence; members may have been misinformed or merely surmising. In addition, it is possible that Local 647 decided to use the Blanton incident as a way of increasing members' enthusiasm for the strike. However, using the Supreme Court's analysis in *NLRB v. Transportation Management Corp.,* unless the Blanton incident was a precipitating factor of the strike, i.e., the strike would not have occurred but for the Blanton incident, then the strike is not illegal regardless of Local 647's utilization of the Blanton incident during the strike.

We find credible the testimony of the various union committeemen and President Adams that the unresolved grievances, in particular those involving subcontracting, had been a source of contention since before June 1981. Charles Ohmer, GE's Manager of Employee Relations, testified that as of March, 1982 there were at least 100 unresolved grievances which would permit a strike under the clear language of Article XXIII(2).

The testimony clearly indicates that the union was under no contractual obligation to notify GE that it intended to call a strike or to identify the reason or reasons for the strike. That testimony comports with our own reading of the clear language of Article XXIII(2).

We find that the Blanton incident exacerbated an already difficult situation, and at least in the minds of some members, if not of the Bargaining Committeemen, was a reason for the strike.

Nevertheless, after evaluating the evidence and the testimony of the witnesses, we conclude that the strike would have been called as a result of unresolved grievances even had the Blanton incident not occurred.

## CONCLUSIONS OF LAW

This court has jurisdiction of this matter under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

The exception to the no-strike clause in the collective bargaining agreement, Article XXIII(2) permits a mid-term strike over unresolved grievances within a reasonable time after the company refuses to arbitrate a grievance.

A strike called in March 1982 after GE refused to submit grievances to arbitration in November 1981 and February 1982 is within a reasonable time.

A strike called pursuant to a collective bargaining agreement which includes an exception to a general no-strike clause shall be analyzed according to *NLRB v. Transportation Management Corp.,* —— U.S. ——, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983) and *Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Unresolved grievances and the Blanton incident were both factors in the decision to call a strike.

The defendant proved by a preponderance of the evidence that Local 647 would have struck over the unresolved grievances even in the absence of the Blanton incident.

Accordingly judgment is hereby entered for defendant Local 647 and against plain-

tiff GE and the complaint herein is dismissed.

SO ORDERED.